UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


TANGEYON S. WALL                                    CIVIL ACTION

VERSUS                                              NO: 09-3486

UNIVERSITY OF NEW ORLEANS                           SECTION: "S" (5)


**ORDER AND REASONS**

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed on behalf of defendant, University of New Orleans, by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (Doc. #20) is **GRANTED**, and the complaint is **DISMISSED**.[1]

**BACKGROUND**

Plaintiff, Tangeyon S. Wall, was employed by the University of New Orleans, an administrative unit of the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("UNO"), for 28 and a half years. Plaintiff's responsibilities included ensuring

---

[1] Defendant filed a Motion to Strike portions of affidavits filed by plaintiff in support of her opposition to defendant's Motion for Summary Judgment (Doc. #29). Specifically, defendant moved to strike paragraphs 5 though 13 of the affidavit of Myron Angel, paragraph 17 of the affidavit of Tangeyon Wall, and the entire affidavit of Dr. Raquel Cortina. The court has considered the affidavits, and finds that even with the affidavits, defendant's Motion for Summary Judgment should be granted. Therefore, defendant's Motion to Strike (Doc. #29) is DISMISSED AS MOOT.

UNO's compliance with Equal Employment Opportunity ("EEO") requirements, and handling employees' EEO complaints. At the time of her termination on May 11, 2007, plaintiff's title was Assistant to the Chancellor for Equal Opportunity.

On August 21, 2007, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination under Title VII. Specifically, plaintiff alleged that she was subjected to a hostile work environment following her return to work after Hurricane Katrina in that she was denied restoration of staff, denied an operating budget, denied attendance at meetings, denied an adequate pay increase, and questioned about her whereabouts. She also alleged that she was discharged in retaliation for filing a grievance against UNO's Chancellor, Timothy Ryan.

On December 18, 2008, plaintiff received a Right to Sue letter from the EEOC. She filed this suit against UNO in the United States District Court for the Eastern District of Louisiana on May 8, 2009. Plaintiff alleges that UNO is liable for race discrimination by subjecting her to a hostile work environment after Hurricane Katrina in that she was denied restoration of staff, denied an operating budget, denied attendance at meetings, denied an adequate pay increase, and for retaliating against her by terminating her for filing an internal grievance against Chancellor Ryan. Plaintiff seeks: (1) an injunction preventing UNO from engaging in discriminatory employment practices; (2) an order that UNO provide equal employment opportunities for qualified individuals and eradicate the effects of its past and present unlawful employment practices; (3) pecuniary damages including back pay with interest and job search expenses, and (4) non-pecuniary damages

including emotional pain and suffering, inconvenience, loss of enjoyment of life, lowered self esteem, and humiliation.

UNO moved for summary judgment arguing that plaintiff's case should be dismissed. UNO argues that claims that are not included in plaintiff's EEOC charge or complaint, but about which she testified, are not properly before the court and should be dismissed. UNO also argues that plaintiff's claim regarding the denial of an operating budget in June 2005 is time barred. Further, UNO argues that plaintiff has not been subjected to adverse employment action, and she cannot prove discrimination because there was a legitimate, non-discriminatory explanation for each act about which she complains. Plaintiff argues that her claims are not time barred[2] and that the non-discriminatory explanations offered by UNO for the alleged adverse employment actions are pretextual.

**1.     Legal Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations,

---

[2] It is unnecessary to evaluate whether plaintiff's claims are time barred because she cannot succeed on the merits of her claims.

3

unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**2.      Claims Not Properly Before the Court**

UNO contends that plaintiff seeks to assert claims that are not properly before the court, and that such claims should be dismissed. Plaintiff testified that she was subjected to discrimination or retaliation when: (1) personnel forms that she once reviewed were re-routed to a white employee; (2) she was required to report to work after Hurricane Katrina; and (3) the Chancellor attempted to re-locate her office. UNO argues that these claims are not in plaintiff's EEOC charge, nor in her complaint, and that she should not be permitted to assert such claims.

In her EEOC charge, plaintiff claimed that she was "subjected to adverse treatment and a hostile work environment in the form of denied restoration of staff, denied an operating budget, denied attendance to meetings, received an inadequate pay increase, questioned about [her] whereabouts and [had] [her] performance criticized by unauthorized personnel," and that she was retaliated against and terminated for complaining about the discriminatory treatment. Plaintiff's complaint alleges the same claims, except it does not include a claim that plaintiff was "questioned about [her] whereabouts and [had] [her] performance criticized by unauthorized personnel." Plaintiff's complaint does not include claims regarding personnel forms that she once reviewed that were re-routed to a white employee, that she was required to report to work after Hurricane Katrina,

4

or that the Chancellor attempted to re-locate her office. Thus, such claims are not before the court, and need not be further addressed.

**2.    Plaintiff's Title VII Claims**

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or discharge any individual, or to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race . . ." 42 U.S.C. § 2000e-2(a)(1). Plaintiff alleges that her workplace was racially hostile, and that she was retaliated against and fired for filing a grievance against Chancellor Ryan.

**A.    Racially Hostile Work Environment**

In analyzing whether plaintiff was subjected to a racially hostile working environment, the court must consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir.2002). Only when the workplace is "permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Nat'l R.R, Passenger Corp., 122 S.Ct. at 2074 (quoting Harris v. Forklift Sys., Inc., 114 S.Ct. 367, 370 (1993). Conduct "that is not severe or pervasive enough to create an objective hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." Harris,114 S.Ct. at 370.

Plaintiff alleges that she was subject to a racially hostile work environment "in the form of denied restoration of staff, denied operating budget, denied attendance to meetings, [and] given an

inadequate pay increase." Plaintiff testified that she felt that was discriminated against by each of these incidents. She also testified that the employees of Chancellor Ryan's office "all shared the same attitude of intimidation and hostility."

Even if the alleged actions were discriminatory, plaintiff cannot maintain an action for racially hostile work environment because she has not shown that the workplace was permeated with discriminatory intimidation, ridicule, and insult. Plaintiff offers no testimony that she was physically threatened or humiliated by any of the conduct. Further, there is nothing in plaintiff's testimony that shows that the allegedly racially discriminatory acts taken together were so severe or pervasive to create an objectively racially hostile work environment. Plaintiff's subjective perception of an attitude of intimidation and hostility is insufficient to establish that her work environment was objectively hostile or abusive. Additionally, plaintiff was unable to connect any racial element into any of her concerns about the allegedly hostile environment. Therefore, plaintiff has not shown that she was subjected to a racially hostile work environment, and her claim is DISMISSED.

### B. Retaliation

Section 704(a) of Title VII prohibits an employer from discriminating against any employee because the employee has made a charge under Title VII. 42 U.S.C. § 2000e-3(a). The court applies the McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973), evidentiary framework from Title VII cases to claims of retaliation. Aldrup v. Caldera, 274 F.3d 282, 286 (5th Cir. 2001). To establish a *prima facie* case of Title VII retaliation, the plaintiff must show that: (1) she engaged in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal link existed

between the protected activity and the adverse action. Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 1008). A plaintiff must demonstrate that the adverse employment action would not have occurred "but for" plaintiff's protected activity. Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005). A plaintiff who is unable to show a *prima facie* case cannot survive a summary judgment challenge as to the Title VII claims. Byers v. Dallas Morning News, Inc., 209 F.3d 419, 429 (5th Cir. 2000).

"If the plaintiff makes a *prima facie* showing, the burden then shifts to the employer to articulate a legitimate ... non-retaliatory reason for its employment action. If the employer meets this burden of production, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason." Aryain, 534 F.3d at 484.

"The timing of the adverse employment action can be a significant, although not necessarily determinative, factor" to establish the requisite nexus. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092 (5th Cir. 1995). However, "temporal proximity alone is insufficient to prove "but for" causation." Strong v. Univ. Healthcare Sys., LLC, 482 F.3d 802, 808 (5th Cir. 2007).

In her complaint, Plaintiff alleges that she was fired in retaliation for filing an internal grievance against Chancellor Ryan regarding the alleged hostile work environment. Plaintiff also alleges that she was retaliated against "in the form of denied restoration of staff, denied operating budget, denied attendance to meetings, [and] given an inadequate pay increase" for filing of a grievance against Chancellor Ryan. The grievance, which was filed on January 11, 2006, includes complaints about plaintiff's lack of support staff and her salary level. Additionally, plaintiff testified

7

that her post-Katrina budget complaints concern her lack of support staff.[3] Further, plaintiff testified that she had complaints about her budget in June 2005, was denied attendance at meetings as early as 2003, and was denied a salary increase in 2004. Because these allegedly discriminatory acts predate the filing of the grievance, they could not have been done in retaliation for filing the grievance. Thus, plaintiff's only potential retaliation claims concern her salary level in July 2006, when two white employees received a salary increase, and her termination.[4]

### i. Salary

Plaintiff alleges that she did not receive an appropriate salary increase in retaliation for her filing a grievance against Chancellor Ryan. In July 2006 two white female employees who reported

---

[3] Specifically, plaintiff testified:

> Q: – I want to ask you about your contention that you were denied an operating budget. Did that occur post-Katrina?
>
> A: Yes, it did.
>
> Q: And did the denial arise out of a request that you made for a budget?
>
> A: Yes.
>
> Q: And how did you go about making the request and to whom did you make the request?
>
> A: To the chancellor. I did inquire as to what operations was I going to be afforded because I had no staff. . . I was a one-person office at that point without a staff, without any budget, without assistance technically or otherwise.

Wall Deposition, p. 105, l. 18 - p. 106, l. 9.

[4] Plaintiff argues that the complained of discriminatory acts were done in retaliation for her opposing various discriminatory actions and reporting those actions to Chancellor Ryan in her capacity as an EEO officer. Such claims are not mentioned in plaintiff's complaint, and thus are not before the court.

to Chancellor Ryan received salary increases in the amounts of approximately $15,000 and $20,000. Plaintiff testified that she thought that the favorable treatment shown to those employees in a time when UNO's budget was tight was evidence of retaliatory racial discrimination against her.

Chancellor Ryan testified that the employees in question received salary increases because they were asked to assume more responsibility. He explained that their salary increases were based on the additional work that they were asked to perform. Chancellor Ryan testified that plaintiff did not receive a salary increase because she did not assume any additional responsibilities. Further, Chancellor Ryan explained that the salary increases were justified because:

> Part of the big picture of a university is that you quite often save money by consolidating responsibilities, and asking certain individuals to take on more responsibility; and then it obviates the need for hiring other people at higher salaries and benefits to do that work. So quite often, when you do have tight budget times, you redefine positions; and ask people to take on additional responsibility; and pay them accordingly . . .

Ryan Deposition, p. 39, l. 16 - p. 40, l. 1.

Plaintiff has not shown that "but for" her filing the grievance against Chancellor Ryan she would have received a salary increase comparable to that which was received by the white employees who assumed additional responsibilities. Also, UNO has articulated a legitimate, non-retaliatory reason for the salary increases that plaintiff has not shown to be pretextual. Plaintiff testified that she has not see those employees' job descriptions and does not know what their responsibilities were. Therefore, plaintiff's retaliation claim regarding her allegedly inadequate salary increase is DISMISSED.

### ii. Termination

Plaintiff alleges that she was terminated on May 11, 2007 in retaliation for filing a grievance against Chancellor Ryan on January 11, 2006. Plaintiff claims that Chancellor Ryan's justification for her termination, i.e. her failure to update UNO's Affirmative Action Plan in 2005 and 2006, is pretextual and that he had a discriminatory state of mind. As evidence, she cites Chancellor Ryan's alleged statement after receiving the grievance that he "reward[s] loyalty, not disloyalty." Plaintiff contends that she believed UNO was exempt from updating the Affirmative Action Plan in November 2005 due to Hurricane Katrina. As evidence, plaintiff cites a conversation with someone at the Office of Federal Contract Compliance Programs ("OFCCP") and an H.R. Alert she received from Phelps Dunbar, LLP, Counselors at Law, after the November 2005 update would have been due. Further, plaintiff contends that information she needed to update UNO's Affirmative Action Plan was not readily available after Hurricane Katrina.

Chancellor Ryan testified that plaintiff was terminated due to her failure to update UNO's Affirmative Action Plan for two consecutive years. He testified that UNO's Affirmative Action Plan was required to be updated every year. He also testified that plaintiff could have updated it after Hurricane Katrina and that the information she needed was on the UNO computers that he personally retrieved from the campus after the storm. Further, Chancellor Ryan testified that plaintiff never approached him to say that she could not update UNO's Affirmative Action Plan after Hurricane Katrina because she did not have the tools, information, or staff necessary, so he did not have the opportunity to appropriately address any issues she may have had to make sure the job was completed. Chancellor Ryan testified that when he questioned plaintiff about her failure to update

UNO's Affirmative Action Plan, she told him that UNO had a waiver, and that she heard the waiver in the media. Chancellor Ryan then investigated whether UNO had such a waiver, and discovered that it did not. He stated that plaintiff's failure to update the Affirmative Action Plan put UNO at risk of non-compliance with federal contractor requirements, and that he had lost confidence in her trustworthiness and ability to perform her job.

Plaintiff has not shown that "but for" her filing the grievance against Chancellor Ryan she would not have been terminated. UNO has articulated a legitimate, non-retaliatory reason for plaintiff's termination that plaintiff has not shown to be pretextual. Plaintiff has not refuted Chancellor Ryan's testimony that her failure to update the Affirmative Action Plan for two years placed UNO at risk of non-compliance as a federal contractor. Further, there is no temporal proximity between the grievance and plaintiff's termination. She filed the grievance on January 11, 2006, and was terminated over a year later on May 11, 2007. Although temporal proximity is not a determinative factor, it suggests that her grievance was not the "but for" cause of her termination. Therefore, plaintiff's retaliation claim regarding her termination is DISMISSED.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed on behalf of defendant, University of New Orleans, by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (Doc. #20) is **GRANTED**, and the complaint is **DISMISSED**.

New Orleans, Louisiana, this __16th__ day of April, 2010.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**